## In re UNITED MERCHANTS AND MANUFACTURERS, INC., et al., Debtor.

### No. 80 Civ. 2594.

United States District Court,
S. D. New York.

March 12, 1981.

Gelbert & Kronovet, by Joel B. Zweibel, New York City, for claimants/appellants.

Levin & Weintraub, New York City, by Michael J. Crames, Myron Trepper and Joel Holstein, New York City, for debtor/appellee.

WHITMAN KNAPP, District Judge.

This is an appeal from a decision of the Bankruptcy Court for the Southern District of New York (Roy Babitt, J.) disposing of two claims by Equitable Life Assurance Society of the United States and John Hancock Mutual Life Insurance Company (sometimes hereinafter collectively referred to as "claimants") against the estate of United Merchants and Manufacturers, Inc. (hereinafter "debtor") in a Chapter XI proceeding. One category of claims (in the sum of $2,000,000 by Equitable and $1,000,-000 by Hancock) was based upon provisions in loan agreements between claimants and debtor which provide for the assertion of certain pre-payment charges in the event of default. These were denied in toto by the Bankruptcy Court and claimants appeal from that denial. The second category of claims concerned post-petition collection costs of approximately $77,000 by Equitable and $68,000 by Hancock, including attorneys' fees. These claims were granted in part and denied in part, from which disposition all parties appeal. With respect to the first category, we affirm the Bankruptcy Court's denial of the claims for the reasons stated by Judge Babitt. The present opinion will deal only with the second category of claims, those for post-collection costs, including attorneys' fees.

## Statement of Facts

On July 12, 1977 United Merchants and Manufacturers, Inc. and various of its subsidiaries filed separate petitions for arrangement under Chapter XI of the old Bankruptcy Act. Sections 301 et seq., 11 U.S.C. §§ 701 et seq. The cases were consolidated, a creditors' committee was formed, and in June 1978 an order was entered confirming the debtor's plan. Counsel for various institutional creditors, who accounted for the vast majority—some 75%—of the debt, played an active role throughout the proceedings, and in July 1979 this court affirmed an order by Judge Babitt that reduced the compensation requested by co-counsel to the creditors' committee in part because of their relative passivity as contrasted with the substantial contributions of counsel for the institutional creditors. Counsel for Equitable and Hancock were among those whose efforts were the basis for the decision to reduce the fees awarded to counsel for the creditors' committee.

During the course of the Chapter XI proceeding, Equitable and Hancock filed claims for moneys loaned pursuant to loan agreements dated October 29, 1973 and June 14, 1975 (hereinafter "loan agreements"). Included in these claims were the post-petition legal and collection costs here in issue.

The loan agreements authorize the claimants, in case of default, to add collection costs, including reasonable attorneys' fees, to the face amount of the loan. Thus, each of the agreements provides:

"The [Debtor] covenants that, if it shall default in the making of any payment due under any Note, it will pay to the holder thereof such further amounts, to the extent lawful, as shall be sufficient to pay the costs and expenses of collection, including reasonable counsel fees."

Under the terms of the loan agreements, the filing of a petition in bankruptcy constitutes an event of default.

Claimants urged below that they were entitled to be reimbursed for all expenses and attorneys' fees reasonably incurred during the course of the Chapter XI proceeding. The debtor, on the other hand, argued that claimants were not entitled to any reimbursement for such fees and expenses. Judge Babitt, in a carefully considered opinion, allowed the claims to the extent that claimants could demonstrate such expenses were incurred for services incident to the separate rights of claimants as distinct from the rights of creditors generally. As already indicated, all parties appeal from this disposition. For the reasons which follow, we sustain the debtor's position.

*Discussion*

We start off with the proposition that it is a primary purpose of the Bankruptcy Act to "bring about equitable distribution among creditors." *Kothe v. R. C. Taylor Trust* (1930) 280 U.S. 224, 227, 50 S.Ct. 142, 143, 73 L.Ed. 382. In furtherance of this primary purpose, a bankruptcy court will not enforce any provision in a contract between a bankrupt (or debtor) and one of his creditors which—looking towards the possibility of bankruptcy—would give the latter a preferred position over other creditors in the event of such bankruptcy.

Illustrative of this principle is the general rule that a bankruptcy court will not enforce a penalty, *In re Tastyeast, Inc.* (3d Cir. 1942) 126 F.2d 879, *cert. denied*, 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766, and will scrutinize closely any liquidated damages provision that might conflict with the underlying policies of the Bankruptcy Act. *Kothe, supra*, 280 U.S. 224, 50 S.Ct. 142, 73

L.Ed. 382. Similarly illustrative is the rule that in a bankruptcy or a Chapter XI case the accrual of interest on an *unsecured* debt stops on the filing of the petition. *Bruning v. United States* (1964) 376 U.S. 358, 362, 84 S.Ct. 906, 908, 11 L.Ed.2d 772; *Vanston Bondholders Protective Committee v. Green* (1946) 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162; *Sexton v. Dreyfus* (1911) 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244.

It seems to us that the same principle should bar enforcement of any contractual provision which would permit one creditor—and not others—to charge the estate with legal expenses associated with processing a claim before a bankruptcy court. Judge Babitt and claimants both make passing reference § 63(a) to the Bankruptcy Act, 11 U.S.C. § 103(a) (made applicable in Chapter XI by § 302, 11 U.S.C. § 702), subdivision (8) of which provides for the allowance of "contingent debts and contingent contractual liabilities." Nothing in the legislative history of that section, however, suggests that it was intended to change the historic refusal of the bankruptcy courts to enforce contractual provisions that favor one unsecured creditor over others in the event of bankruptcy. Moreover, it has never been so applied. As Judge Babitt and the claimants concede, not a single decision has been found allowing an unsecured creditor to assert such a claim.

Claimants attempt to base such an allowance on isolated bits of language appearing in a long line of cases permitting *secured* creditors to recover attorneys' fees to the extent that their security is adequate for such purpose. *Security Mortgage Co. v. Powers* (1928) 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236; *In re Continental Vending Machine Corp.* (2d Cir. 1976) 543 F.2d 986; *In re Bain* (6th Cir. 1975) 527 F.2d 681; *National Acceptance Co. v. Zusmann* (5th Cir. 1967) 379 F.2d 351, *cert. denied*, 389 U.S. 975, 88 S.Ct. 478, 19 L.Ed.2d 469; *In re Ferro Contracting Co.* (3d Cir. 1967) 380 F.2d 116, *cert. denied sub nom. Barbato v. Livingston National Bank*, 389 U.S. 974, 88 S.Ct. 475, 19 L.Ed.2d 466; *Webster Drilling Co. v. Walker* (10th Cir. 1961) 286 F.2d 114;

*In re New Haven Clock & Watch Co.* (2d Cir. 1958) 253 F.2d 477; *In re Kashmir Refinishing Co.* (2d Cir. 1938) 94 F.2d 652; *Tawney v. Clemson* (4th Cir. 1936) 81 F.2d 300; *In re International Raw Materials Corp.* (2d Cir. 1927) 22 F.2d 920.[1]

We find these cases to be inapposite. The rule we have above discussed—which in effect prevents the enforcement of any contract that impinges upon the administration of an estate in bankruptcy, has no application whatever to the ability of a *secured* creditor to make contracts establishing rights against his security. The reason for this is that the security has, in effect, been conveyed to such creditor, and his title thereto is superior to that of any trustee in bankruptcy.[2]

This proposition is illustrated by Mr. Justice Brandeis' opinion in *Security Mortgage Co., supra,* 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236. The Justice takes pains to point out that the Court's holding has nothing to do with bankruptcy law at all, but is merely vindicating a contract right to the enforcement of a lien which had priority over any right of the bankruptcy trustee. Thus, the opinion makes clear (at 155, 49 S.Ct. at 86):

> "[T]he Mortgage Company *does not seek to prove the claim in bankruptcy.* It asks to have it allowed as part of the principal debt, which is secured by a lien upon the property sold." (Emphasis supplied.)

The same point is brought home in Judge Mansfield's opinion in *In re Continental Vending Machine Corp., supra,* 543 F.2d 986, the most recent Second Circuit case dealing with the subject. He there observes (at 994):

"However, the fact that the trustee, acting on behalf of the estate, saw fit to provide legal and accounting services in connection with some actions jointly taken by himself and Talcott, did not preclude Talcott from *protecting its payment as a secured creditor in obtaining payment which might differ from that of the estate.*" (Emphasis supplied.)

The only authority arguably supporting the claimants is *Worthen Bank & Trust Co. v. Morris* (8th Cir. 1979) 602 F.2d 826.[3] There, a *secured* creditor appears to have been allowed collection expenses even though the security was not adequate to cover them. It might be urged that, as to the surplus, the creditor was in no better position than a wholly unsecured one. However, the court gave no indication of being aware of this circumstance. To the extent, therefore, that this decision is inconsistent with the views here expressed, we decline to follow it.

Having concluded that the Bankruptcy Act does not authorize payment of claimants' attorneys' fees, we must inquire whether there is anything in our general equitable powers that could be used to obviate the apparent injustice of denying the claimants reimbursement for their expenses in supplying the very services which were used as a basis for reducing the compensation paid to attorneys for the creditors' committee. We believe this inquiry is foreclosed by the Court of Appeals decision in *Guerin v. Weil, Gotshal & Manges* (2d Cir. 1953) 205 F.2d 302. There, Judge Augustus

---

1. They rely, as well on a statement in 3A *Collier on Bankruptcy* ¶ 63.15 (14th ed. 1975) to the effect that prior to 1938 some courts allowed secured *and unsecured* creditors to recover post-petition collection costs. However, examination of the authorities cited in support of this proposition (*In re Kashmir Refinishing Co.,* supra; *Tawney v. Clemson,* supra; *In re Gotham Can Co.* (2d Cir. 1931) 48 F.2d 540; *In re International Raw Materials Corp.,* supra), reveals that they all deal with the rights of a *secured* creditor.

2. Accordingly, post-petition interest, which is denied to unsecured creditors, is allowed to secured creditors to the extent that their securi-

ty is adequate to cover it. *Vanston,* supra, 359 U.S. at 164, 67 S.Ct. at 240.

3. *Hartman v. Utley* (9th Cir. 1964) 335 F.2d 558, from which claimants extensively quote (and which Judge Babitt found to be "tangentially relevant") has in fact no relevance at all to the problem before us. The attorney's fees there at issue had nothing to do with processing a claim in a court of bankruptcy. They had been incurred by the claimants, who had gone surety for the bankrupt, in defending (or otherwise processing) claims that had been made against it by other creditors of the bankrupt.

Hand, speaking for the Court, observed (at 304):

> "This Court has stated: 'It is well settled that the bankruptcy court lacks power to grant, and the policy of the Act is against, compensation not expressly provided for by the Act.' Although it has been broadly stated that a bankruptcy court is a court of equity, the exercise of its equitable power must be strictly confined within the prescribed limits of the Bankruptcy Act...." (Citations omitted.)

A striking illustration of this doctrine is presented by *In re Sapphire Steamship Lines, Inc.* (2d Cir. 1975) 509 F.2d 1242, 1243, where the attorneys representing one of the bankrupt's creditors had done work which added substantially to the value of the estate. Observing that the creditor had not sought the prior permission of the bankruptcy court to act in the trustee's stead, and that the trustee had neither refused nor neglected to act, the Second Circuit concluded (at 1246) that "despite the purported equities" an award of attorneys' fees would be improper.

We therefore reverse the order of the Bankruptcy Court insofar as it allows claimants to recover post-petition collection costs including attorneys' fees.

In summary, the order of the Bankruptcy Court is affirmed insofar as it denies the claims for pre-payment charges and reversed insofar as it allows claimants to recover post-petition attorneys' fees.

SO ORDERED.