In re PETTIBONE CORPORATION,
et al., Debtors.

Bankruptcy No. 86 B 1563–71.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Dec. 11, 1991.

See also 935 F.2d 120.

Andrew J. Maxwell, Maxwell and Perlstein, Chicago, Ill., for PL Trustee.

Kevin T. Keating, McDermott, Will & Emery, Chicago, Ill., for debtor.

Joseph S. Kayne, John C. Sibrava, Williams, Rustein, Goldfarb, Sibrava & Midura, Ltd., Chicago, Ill., for Current Builders and Firemans Fund Ins. Co.

## MEMORANDUM OPINION ON MOTION OF PL TRUSTEE TO ALLOW CLAIMS (POLICY YEAR 1979–80) (*Current Builders, Inc. and Fireman's Fund Insurance Company*)

JACK B. SCHMETTERER, Bankruptcy Judge.

The PL (Products Liability) Trustee has moved to allow the joint claim of Fireman's Fund Insurance Company and Current Builders, Inc. (collectively, "Fireman's Fund") in the amount of $115,888.41, being the principal debt found due in judgment entered by a state court, plus $12,000 in court costs, and such prejudgment and/or post-judgment interest as this Court finds to be allowable. The reorganized Pettibone Corporation entities (collectively referred to as "Pettibone") objects only to allowance of any interest. For reasons that follow the Court allows this joint claim in the amount of $169,690.42 which includes the principal judgment debt plus costs and prejudgment interest, but disallows all post-judgment interest.

### UNDISPUTED FACTS

The following facts are not in dispute, and no party sought to introduce evidence.

On April 16, 1980, an accident occurred involving a crane manufactured by Pettibone and owned by Current Builders, Inc. The Fireman's Fund Insurance Company was Current Builder's insurer and has a subrogation interest in Current Builder's claim against Pettibone. On May 1, 1985, a final judgment was entered by the Circuit Court of Palm Beach County, Florida

against Pettibone in favor of Fireman's Fund in the principal amount of $115,-888.41. The judgment was stayed pending Pettibone's motion for a new trial, and then the state court stay was superseded by the automatic stay under 11 U.S.C. § 362 when Pettibone filed its Chapter 11 petition on January 31, 1986.

Fireman's Fund filed a timely proof of claim which included a claim for interest under Florida law. In December of 1988, the Court confirmed Pettibone's plan of reorganization (the "Plan"). The automatic stay was ended, permitting the state court claim to be liquidated. Having regained jurisdiction over the case before it, the Florida state court rejected Pettibone's motion for a new trial, and the appellate court denied Pettibone's appeal. On July 5, 1991, an order was entered in the state court which fixed costs at $12,000 and pre-judgment interest under Florida law at $41,802.01, and also set post-judgment interest at 12% per annum (the Florida statutory rate) to run from May 1, 1985 to the date of payment. The order further stated, however, that "interest and costs awarded ... are subject to review by the Bankruptcy Court and Pettibone Corporation has not waived their right to contest the Plaintiff's entitlement to interest and costs." The PL Trustee then moved here to allow the principal judgment plus costs and such interest, if any, as this Court deems allowable as a Class 3 PL Claim for the 1979–80 policy year under Article VII of the Debtor's confirmed Plan.

## JURISDICTION

This matter is before the Court pursuant to 28 U.S.C. § 157 and is referred here under Local District Court Rule 2.33. This matter is also here pursuant to ¶ 7.05(b) of the Plan which provides that a "PL Claim shall become an Allowed Claim at such time as it has been (i) reduced to final judgment in a court of competent jurisdiction ..., and (ii) determined to be an Allowed Claim by Final Order of the Bankruptcy Court." This action arises in a case under Title 11 U.S.C., and the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## DISCUSSION

Paragraph 7.05(b) of Pettibone's Plan of Reorganization states, *"no interest on a judgment* or settlement shall be included in such an Allowed Claim." (emphasis added) This provision is key to deciding the issues now presented. Fireman's Fund contends that it is entitled to all pre-petition interest because § 7.05(b) cannot be interpreted any more restrictively than 11 U.S.C. § 502(b)(2) which states,

(b) ... if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(2) such claim is for unmatured interest;

By Fireman's Fund's interpretation of § 502(b), claims must be fully allowed except for what is mentioned in § 502(b)(1) through (8), and since matured pre-petition interest is not in the § 502(b) forbidden list, such interest should be allowed. Fireman's Fund supports its argument by referring to 11 U.S.C. § 1123(b)(5) which states, "a plan may ... include any other appropriate provision not inconsistent with the applicable provisions of this title." Therefore, since the Plan had to comply with the Bankruptcy Code to be confirmed, and § 502(b) does not forbid the inclusion of pre-petition interest, it argues that Plan ¶ 7.05(b) cannot be interpreted to preclude pre-petition interest, whether pre-judgment or post-judgment in this case.

Pre-petition interest otherwise due as a matter of contract or law will generally be fully allowed as part of a claim. Ginsberg, *Bankruptcy: Text, Statutes, Rules* § 10.08[e] (2nd ed. 1991). However, any party may compromise its claim by a later contract. Such a compromise occurs when creditors agree to forego part of their claims in the debtor's plan of reorganization in order to maximize their overall recovery. A plan of reorganization is a contract which binds a debtor and its

**352**

creditors. *In re Mako, Inc.*, 120 B.R. 203, 207 (Bankr.E.D.Okl.1990) ("A Chapter 11 Plan ... is nothing more nor less than a contract between a debtor and the creditors of the bankruptcy estate"); *In re L & V Realty Corp.*, 76 B.R. 35, 37 (Bankr. E.D.N.Y.1987), quoting *In the Matter of United Merchants and Manufacturers, Inc.*, 10 B.R. 312, 24 C.B.C. 220, 226 (Bankr.S.D.N.Y.1981) ("At its simplest, a plan is an offer of promises made by the debtor and accepted by creditors following serious and frequently protracted negotiations").

■ Paragraph 7.05(b) represents part of such compromise by the class of tort claimants in their claims against Pettibone. In order to secure payment of their expected judgments, the class of tort claimants agreed in ¶ 7.05(b) to forego interest on such judgments otherwise due under state law. This Plan provision is essential to the orderly administration of the confirmed Plan. Claimants such as Fireman's Fund were either represented or had a right to be represented throughout the confirmation process and many creditors participated in forming the Plan. Consequently, Fireman's Fund may not belatedly claim that the Plan cuts off its entitlement to post-judgment interest up to the date of bankruptcy filing in contravention of 11 U.S.C. § 502(b) because it is bound by the compromise confirmed in the Plan.

■ However, the prohibition of interest in Plan ¶ 7.05(b) did not preclude pre-judgment interest because it states, "no interest *on a judgment* ... shall be included." (Emphasis supplied.) Pre-judgment interest accrues before entry of a judgment, and thus is not interest "on" a judgment. Pre-judgment interest is "merely another element of pecuniary damages." *Mason v. Reiter*, 564 So.2d 142, 145 (Fla. App.1990). See also *Moore–McCormack Lines v. Amirault*, 202 F.2d 893, 895 (1st Cir.1953) (pre-judgment interest is "an item of damages in the total amount of an ensuing money judgment in order that a plaintiff may be more fully compensated for the wrong complained of"). It is part of the judgment and is not "interest on a judgment." That phrase in ¶ 7.05(b) encompasses only the interest owed to the plaintiff to compensate for the delay in receiving satisfaction on the judgment. In other words, ¶ 7.05(b) cuts off post-judgment interest only. Therefore the pre-judgment interest is allowed as part of the claim to be allowed here. Whether pre-judgment interest is cut off when the judgment is entered post-petition, and whether § 502(b)(2) prohibits the allowance of unmatured interest in that situation, may have to be determined in context of some other dispute. Under facts presented here, the Fireman's Fund judgment was entered pre-petition, and pre-judgment interest is allowed as part of its claim under ¶ 7.05(b) of the Plan.

■ Seeking to collect post-judgment as well as pre-judgment interest, Fireman's Fund also contends that § 502(b)(2) and the injunction imposed by 11 U.S.C. § 524 do not apply to its efforts to collect interest since it is attempting to collect from Pettibone's insurer and not from the bankruptcy estate. Fireman's Fund relies on a series of cases which hold insurers fully liable as secondarily liable parties even though the debtor is discharged of its obligations. See *In re Jet Florida Systems, Inc.*, 883 F.2d 970 (11th Cir.1989); *In re Lembke*, 93 B.R. 701 (Bankr.D.N.D.1988); *In re Stoller's Inc.*, 93 B.R. 628, 635 (Bankr.N.D.Ind. 1988); and *In re Mann*, 58 B.R. 953 (Bankr.W.D.Va.1986). In these cases, claimants were permitted to nominally proceed against the debtor in order to collect from a secondarily liable party such as an insurer. These cases hold that the "fresh start" created by a § 524 injunction will not prevent creditors from collecting from secondary parties who are independently liable for debts incurred by the debtor. *In re Jet Florida Systems*, 883 F.2d at 973 ("a discharge will not act to enjoin a creditor from taking action against another who also might be liable to the creditor"); *In re Lembke*, 93 B.R. at 703 ("it makes no sense legally or equitably for an insurer to escape insurance coverage for injuries caused by its insured merely by the happenstance of the insured's bankruptcy discharge"); and *In re Stoller's*, 93 B.R. at 635–36 ("bankruptcy proceedings do not affect the liabilities of co-debtors and guarantors").

The Plan complies with this principle by providing that claimants may proceed against the Debtor and its insurers in an appropriate forum to determine liability.

However, this principle only applies to the extent the debtor is not affected by outcome of the litigation. *In re Jet Florida Systems,* 883 F.2d at 975 (allowing the suit against the debtor's insurer to go forward "upon the condition that the debtor would not be personally liable in a way that would interfere with the debtor's fresh start"); *In re Lembke,* 93 B.R. at 702 ("the injunction does not affect a personal injury claimant's efforts to recover from the debtor's insurer so long as the insurer covers all defense costs and all potential liability"). Fireman's Fund argues that it is only attempting to recover from the secondary insurance carriers and not from the general bankruptcy estate. By its reasoning, the Debtor is not affected by the inclusion of interest and only an independently liable party will be liable.

■ The Court does not agree with that assessment. In the claimant's sub-class (Class 3 PL claimants for the 1979–80 policy year), there are eleven claims which aggregate to $11,140,948.00, and there is insurance coverage of $10,000,000 (one million from Mutual Marine Insurance Company and nine million from Integrity Insurance Company). Clearly, Debtor's potential liability to claimants in Fireman's Fund's sub-class exceeds its insurance coverage. Pursuant to ¶ 5.02 of the Plan, Class 3 PL claimants shall receive "(i) a participation in the distributions to holders of Allowed claims in Class 4 based on the Uninsured PL Claims Amount ... and (ii) the benefits of the PL Insurance Policies." Claimants such as Fireman's Fund have a Class 4 unsecured claim against the Debtor for a portion of its allowed claim to cover the uninsured portion of their claims.

By including both pre- and post-petition interest in its claim, Fireman's Fund more than doubles its claim.[1] Increasing the amount of the principal claim has two effects. Debtor's dollar liability to the claim-

ants changes because the size of the Class 4 unsecured creditors' claims increases, and the Class 3 plaintiffs' share of insurance proceeds is decreased since all the claimants in the sub-class must share in a finite insurance fund. This affects results under the confirmed Plan, in which the claimants of each class share in the limited available insurance proceeds. Thus, allowing interest in this claim is likely to affect the Debtor by affecting the size of the Class 4 claim and by altering the positions of similarly situated Class 3 claimants. This is one of the reasons that ¶ 7.05(b) prohibits the inclusion of post-judgment interest from Class 3 claims. Since the Debtor is likely to be affected by the inclusion of interest, the injunction created by this Court under § 524 applies to bar collection of interest on judgments from the Debtor's insurers.

■ Pettibone argues that the Plan excludes all interest, whether pre-judgment or post-judgment, from allowed claims. Pettibone relies on *Jones v. Keene Corp.,* 933 F.2d 209 (3rd Cir.1991) to support the validity of a clause which prohibits allowance of interest on judgments. The plaintiffs in *Jones* were appealing the district court's denial of post-judgment interest on the portion of their asbestos-disease award due them from a fund created out of the Johns–Manville Corporation's plan of reorganization. The plaintiffs filed their suit after the debtor's plan was confirmed, but a clause in that plan provided that "no amounts shall be paid to holders of Class 4 Claims with respect to interest after the filing date." *Id.* at 212. The court in *Jones* held that while the plaintiffs were ordinarily entitled to post-judgment interest under applicable state law, the plan prevented the plaintiffs from including any post-petition interest in their claim. *Id.* at 214.

However, the facts in *Jones* differ from those in this case. In *Jones* the plan terms were unambiguous and conformed to 11 U.S.C. § 502(b)(2). The claim in *Jones* arose after the date the bankruptcy petition was filed, and there was no matured

---

1. The total interest on its judgment includes $41,802.01 in pre-petition interest and approximately $90,393 in post-petition interest. The post-petition interest is calculated at 12% of $115,888.41, or $13,906.61 per year, multiplied by 6.5 years (May 1, 1985 to the present).

interest as of the date of the petition. In this case, the Fireman's Fund claim arose before the Debtor's petition was filed, and thus a portion of the interest claimed is for a pre-petition period of time (from the accident to the date of the bankruptcy petition). Since the judgment in *Jones* was entered post-petition, the Third Circuit found that all interest was cut off. However, the judgment here was entered pre-petition, so § 502(b)(2) does not bar pre-judgment interest. Moreover, the Plan wording here was different from that in *Jones*, and ¶ 7.05(b) does not exclude pre-judgment interest. Therefore, the *Jones* case is not applicable here.

### CONCLUSION

Accordingly, the joint claim of Fireman's Fund Insurance Company and Current Builders, Inc. is allowed, but only in amount of the principal judgment plus court costs and pre-judgment interest. Post-judgment interest is disallowed. The Claim is therefore allowed in the amount of $169,690.42, as an Allowed Claim under the Plan.