**Gayle TAYLOR, Appellant**

v.

**CITY OF PHILADELPHIA; Michael Chitwood, Lt., Badge 823; Gregory Singleton, Badge 8046; John Rankin, III, Badge 9019; Sylvester Johnson.**

**No. 04–3022.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) July 14, 2005.

Decided July 28, 2005.

---

Tshaka H. Lafayette, Lafayette & Associates, Philadelphia, PA, for Appellant.

Jane L. Istvan, City of Philadelphia Law Department, Philadelphia, PA, for Appellees.

Before: ALITO, VAN ANTWERPEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

Appellant Gayle Taylor appeals from the District Court's May 26, 2004 order granting summary judgment in favor of the City of Philadelphia, Commissioner Sylvester Johnson, Detective John Rankin, and Detective Gregory Singleton ("Appellees"). Taylor sued Appellees under 42 U.S.C. § 1983 and state law seeking damages and injunctive relief arising from her arrest in

2002 and subsequent termination from the Philadelphia Police Department. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.[1]

## I.

The City of Philadelphia employed Appellant as a dispatcher from 1989 until February 24, 2002, when she was dismissed for conduct unbecoming an employee pursuant to Section 1.75 of the Police Department's Disciplinary Code. As the District Court noted, the underlying conduct giving rise to Appellant's dismissal is not materially disputed. It is as follows.

Ms. Taylor's son, Jahil Davis, was arrested on January 24, 2002 for robbery. He thwarted a search of his residence by instructing his girlfriend to give certain items to Appellant. Appellant thereupon accepted, *inter alia*, a white plastic bag. Shortly thereafter, Appellant declined to give police consent to search her home in connection with the robbery. She then put the white bag in a pocket of her clothing and kept it on her person that day as she attempted to obtain a lawyer by visiting, in person, the offices of her State Representative, a local lawyer, her union, the Pennsylvania Bar Association, Community Legal Services, the Defender's Association, and the District Attorney. Unsuccessful, she ultimately gave up, went to the 18th Police District, and turned the bag over to police. The record shows that Ms. Taylor knew there was a gun in the bag because she had felt it through the bag. The record also shows that Ms. Taylor told police that the bag constituted "discovery" that she wanted to turn in to police. When police opened the bag, they found a loaded semi-automatic and nineteen packets of what appeared to be crack cocaine. Ms. Taylor was then arrested and charged with tampering with evidence, obstruction of justice, hindering apprehension, aiding consummation of a crime, violating the Uniform Firearm Act by carrying a gun without a license, violating the Uniform Firearm Act by carrying a gun in a public street or place, and possession of a controlled substance with knowledge and intent.

On January 28, 2002, Commissioner Sylvester Johnson suspended Appellant from her position for 30 days with notice of intent to dismiss. On February 24, 2002, Commissioner Johnson terminated Ms. Taylor for conduct unbecoming an employee pursuant to Section 1.75 of the Philadelphia Police Department's Disciplinary Code. Ms. Taylor unsuccessfully appealed to the Civil Service Commission of the City of Philadelphia. She elected not to appeal that ruling to the Philadelphia Court of Common Pleas. Separately, on April 8, 2002, the Court of Common Pleas dismissed in its entirely the criminal case against Ms. Taylor, finding insufficient evidence to support the charges. Ms. Taylor then filed this suit in the Court of Common Pleas on May 2, 2003; Appellees removed to the United States District Court for the Eastern District of Pennsylvania; and the District Court subsequently granted the motion for summary judgment. This appeal followed.

## III.

Our review of a district court's decision to grant summary judgment is *de novo*. *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir.2004); *Blair v. Scott Spe-*

---

1. Specifically, we have jurisdiction to review the District Court's decision because its June 24, 2004 order denying Appellant's subsequent motion for reconsideration constituted a final order ending the litigation. *See* 28 U.S.C. § 1291; *Jones v. Keene Corp.*, 933 F.2d 209, 211 (3d Cir.1991) (order that ends the litigation is a final order).

*cialty Gases,* 283 F.3d 595, 602–03 (3d Cir.2002). Viewing the evidence in the light most favorable to the nonmoving party, we will affirm a district court's order granting summary judgment where no genuine issue as to any material fact exists. *See* Fed.R.Civ.P. 56(c).

 Appellant raises two arguments on appeal: first, that the policy under which she was dismissed is unconstitutionally vague, and second, that probable cause to arrest her did not exist as a matter of law. As to Appellant's first argument, a regulation governing conduct is "unconstitutionally vague when it 'either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application.'" *Rode v. Dellarciprete,* 845 F.2d 1195, 1199 (3d Cir. 1988) (quoting *Connally v. Gen. Const. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). However, if the challenged regulation clearly applies to the challenger's conduct, he or she cannot challenge the regulation for facial vagueness. *See Gibson v. Mayor and Council of the City of Wilmington,* 355 F.3d 215, 225 (3d Cir. 2004) (citing *Parker v. Levy,* 417 U.S. 733, 755–56, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)). Furthermore, a vagueness challenge requires a plaintiff to show that he himself was injured by the vague language of the regulation. *Gibson,* 355 F.3d at 225–26; *Rode,* 845 F.2d at 1200.

Here, Appellant's vagueness argument turns on her contention that Police Department Disciplinary Code Section 1.75 does not apply to her because she was a civilian employee of the Police Department, not a police officer. While Article I of the Disciplinary Code is entitled "Conduct Unbecoming an Officer," Section 1.75 of Article I states:

> Conduct Unbecoming an *Employee,* Section 1.75: Repeated violations of Depart-

mental rules and regulations, and/or other course of conduct indicating that a *member* has little or no regard for his/her responsibility as a *member* of the Police Department.

Article I, Section 1.75 (emphasis added). In contending that Article I on its face applies only to police officers, Appellant argues that she was deprived of fair notice that she would be subject to Section 1.75's proscriptions. She also argues that Section 1.75 is also impermissibly vague because it does not clearly state that it applies to conduct outside of work.

The record at summary judgment revealed the following undisputed material facts. At Appellant's hearing before the Civil Service Commission, the head of Human Relations at the Philadelphia Police Department testified that the Disciplinary Code governs all Police Department employees; that for several years the Department had provided a hard copy of the Code to all new employees; that oral notice to employees was also provided; and that the union representing civilian employees of the Police Department had never challenged application of any Code provision to a union member. In addition to this testimony, Appellees proffered unrebutted evidence showing that since 2000, fifteen Police Department civilian employees, inclusive of Ms. Taylor, had been dismissed pursuant to Section 1.75.

On this evidence, the Commission found that no statutory authority or case law supported Appellant's claim that Section 1.75 applied only to police officers; that Appellant was aware of the Code's general applicability to her; and that it applied to everyday conduct by civilian employees both in and out of the workplace. Appellant did not appeal these findings of fact, rendering them conclusive and binding upon her in the District Court, which separately found that, as a civilian employee of

the Police Department, Appellant had sufficient notice of the Code to know that she could be disciplined for inappropriate conduct outside of work. We agree with the District Court that summary judgment in favor of Appellees was therefore appropriate on this record, where Appellant's employment placed her within the scope of Section 1.75 and where her conduct on the day in question easily falls within the substantive purview of that regulation. The undisputed material facts show that Appellant lacked standing to challenge Section 1.75 on vagueness grounds, *see Rode,* 845 F.2d at 1199–1200, and that she was not injured by the purported vague language of the regulation. *See Gibson,* 355 F.3d at 225–26. Rather, she was injured by her own decisions and actions that day. *See id.*

■■■ As to Appellant's second argument, she contends that the District Court erred in ruling that there was no disputed material fact as to whether police had probable cause to arrest her. "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers,* 308 F.3d 251, 255 (3d Cir.2002) (citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); *see also Sharrar v. Felsing,* 128 F.3d 810, 818 (3d Cir.1997). The validity of the arrest is determined by the law of the state where the arrest occurred. *Myers,* 308 F.3d at 255. An arrest violates the Fourth Amendment when it is not supported by probable cause. *Orsatti v. New Jersey State Police,* 71 F.3d 480, 484 (3d Cir.1995). The analysis must be based upon "the objective facts available to the officers at the time of the arrest." *Sharrar,* 128 F.3d at 818. We must look at the "totality of the circumstances," *id.* at 818

(citing *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)), and use a "common sense" approach. *Id.* Accordingly, in evaluating a given case, we may not consider each fact in isolation. *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

"Although, generally, 'the question of probable cause in a Section 1983 damage suit is one for the jury,' *Montgomery v. De Simone,* 159 F.3d 120, 124 (3d Cir.1998), a district court may conclude 'that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly." *Estate of Smith v. Marasco,* 318 F.3d 497, 514 (3d Cir.2003) (quoting *Sherwood v. Mulvihill,* 113 F.3d 396, 401 (3d Cir.1997)). That is the case here, as the District Court correctly held.

At the time of Appellant's arrest, detectives knew that she had just entered a police station with a bag that she herself had identified to them as "discovery" that needed to be turned over to police. They also knew that her son was implicated in an ongoing robbery investigation; that her son's residence had been searched earlier that day; that Appellant's own residence had also been searched earlier that day; and that Appellant refused to explain how she came into possession of the bag she was now giving to police. While it was of course within Appellant's rights to so refuse, this fact was nonetheless another objectively known fact in the totality of circumstances that afternoon, as was the officers' discovery, in Appellant's presence, that the bag contained a loaded semi-automatic gun and nineteen small packets of what appeared to be crack cocaine. All of these facts were known by officers prior to Appellant's arrest.

Appellant does not proffer evidence raising questions of material fact or credibility

with regard to this account, arguing only that the arresting detectives may have had improper motives and that they had little, if any, knowledge at the time they arrested her. As to her first contention, improper motives are irrelevant to the question of whether objective facts available to the detectives at the time reasonably could have led them to conclude Appellant had committed an offense. *See Marasco,* 318 F.3d at 514 (citing *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). As to her second contention, the record evidence, summarized above, contradicts her position. Moreover, it is clear that the arresting officers knew these facts prior to arrest. For example, the record shows that Detective Rankin had been briefed by Detective Casee, who had worked the case during the day and who had searched Appellant's residence; he had also been briefed by Lieutenant Chitwood, who first spoke with Appellant when she arrived at the 18th District; and the arresting officers had obtained their objective knowledge from Appellant herself, prior to her arrest. For example, as Appellant herself testified at her deposition, the detectives and the lieutenant had removed the gun from the bag prior to her arrest and unloaded it, all in her presence. Such circumstances easily distinguish Appellant's situation from cases where probable cause is lacking. *See, e.g., Myers,* 308 F.3d at 264 (finding no probable cause where arresting officer lacked knowledge until after arrest and still never knew if gun had remained legally possessed at all times).

Under these undisputed material facts, we are satisfied that no rational jury could find that the officers here were objectively unreasonable in concluding that, based on the information available to them at the time, they had probable cause to believe that Appellant had committed one or more of the offenses for which she was arrested. We have considered the remaining arguments advanced by the parties and conclude that no further discussion is necessary. Accordingly, the May 26, 2004 order is affirmed.

