SPROUSE, Circuit Judge:
 

 Twin Parks Limited Partnership appeals from the district court’s judgment affirming the bankruptcy judge’s decision in favor of N.S.C. Contractors, Inc. Twin Parks contends that the bankruptcy judge lacked jurisdiction to decide N.S.C.’s state law claim of breach of contract. Twin Parks also challenges the award of post-bankruptcy petition interest to N.S.C., and assigns numerous other errors. Finding merit in the appellant’s challenge to the award of interest but none in its other assignments of error, we affirm the district court’s decision except that part awarding post-petition interest. We reverse that part of the decision and reduce the money judgment accordingly.
 

 Twin Parks filed a Chapter XII petition on June 14, 1979, seeking a real property arrangement under the Bankruptcy Code.
 
 [1]
 
 Pending at the time were two proceedings initiated by N.S.C. Contractors to resolve a contractual dispute with Twin Parks over monies owed for work performed on its residential apartment project. One of the proceedings was before the American Arbitration Association, which was designated by contract to handle disagreements. The other proceeding was pending in the Circuit Court for Worcester County, Maryland, and
 
 *1375
 
 involved N.S.C.’s claim to a mechanic’s lien against buildings it had constructed for Twin Parks. The bankruptcy judge issued a Rule 12-43
 
 [2]
 
 order after Twin Parks’ Chapter XII petition was filed, staying both the arbitration and state court proceedings.
 

 N.S.C. subsequently filed a complaint with the bankruptcy court seeking to lift the stay order or, alternatively, asking the court to allow its claim against the debtor. Twin Parks answered, filed a counterclaim and specifically requested the court to take jurisdiction over the dispute. It demanded a jury trial on all issues pertaining to the state law breach of contract claim. This demand was denied and the bankruptcy judge heard and decided the case without a jury. The trial began on July 29,1980, was delayed several times due to the illness of Twin Parks’ major shareholder and was finally concluded in favor of N.S.C. on May 9, 1981. Twin Parks appealed the adverse judgment to the district court which reviewed the record and affirmed the bankruptcy judge’s order on April 20, 1982.
 

 I
 

 Twin Parks’ principal argument for reversal is jurisdictional. It argues that the bankruptcy judge, who was clearly not an Article III judge,
 
 [3]
 
 had no power to adjudicate contract claims arising entirely under state law. It points to
 
 Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and to this court’s even more recent decision in
 
 1616 Reminc Ltd. Partnership v. Atchinson & Keller Co.,
 
 704 F.2d 1313 (4th Cir.1983) for support.
 
 [4]
 

 The jurisdictional argument Twin Parks now raises for the first time would have merit if made by a litigant not voluntarily before the court and whose
 
 action was not underway on the effective dates of the Northern Pipeline
 
 and
 
 Reminc
 
 decisions.
 
 Northern Pipeline
 
 and
 
 Reminc
 
 obviously provide support for its argument that pre-Reform Act bankruptcy judges, acting under the supervision of Article III District Courts, cannot decide claims arising entirely under state law without the consent of the parties.
 
 Northern Pipeline,
 
 at 87, 102 S.Ct. at 2880, 73 L.Ed.2d at 625;
 
 Reminc,
 
 704 F.2d at 1318. The
 
 Reminc
 
 Court’s discussion was particularly supportive, stressing the point that pre-Reform Act judges are not sufficiently adjunct to the district court to justify their exercise of federal judicial power
 
 [5]
 
 over state disputes. Twin
 
 *1376
 
 Parks, however, cannot benefit from these recently announced decisions because they were intended to operate prospectively. Twin Parks’ claims were fully litigated by the bankruptcy judge, affirmed by the district court and pending on appeal well before the effective dates of the
 
 Northern Pipeline
 
 and
 
 Reminc
 
 decisions.
 

 The Supreme Court in
 
 Northern Pipeline
 
 stated:
 

 In the present case, all of these considerations militate against the retroactive application of our holding today. It is plain that Congress’ broad grant of judicial power to non-Article III bankruptcy judges presents an unprecedented interpretation of Article III. It is equally clear that retroactive application would not further the operation of our holding, and would surely visit substantial injustice and hardship upon those litigants who relied upon the Act’s vesting of jurisdiction in the bankruptcy courts.. . . We hold, therefore, that our decision shall apply
 
 only prospectively.
 

 458 U.S. at 88, 102 S.Ct. at 2880, 73 L.Ed.2d at 626. (emphasis added) In
 
 Rem-inc,
 
 we agreed with the appellant that the bankruptcy judge lacked jurisdiction, but emphasized that the decision must be applied prospectively as to all other litigants.
 
 [6]
 
 704 F.2d at 1319.
 

 Twin Parks contends nevertheless that only cases which have exhausted appeals are foreclosed by a “prospective” change in the law. It argues further that an appellate court is bound to apply the law in effect at the time it renders a decision — in this case the jurisdictional rule established by
 
 Northern Pipeline.
 

 This argument oversimplifies the controlling rule. It is generally true that “a change in the law will be given effect while a case is on direct review,”
 
 Linkletter
 
 v.
 
 Walker,
 
 381 U.S. 618, 627, 85 S.Ct. 1731, 1736, 14 L.Ed.2d 601, 607 (1965). Tribunals announcing new principles of law, however, qualify their retroactivity in differing ways, and the new principles’ effect oh cases then existing in various stages of litigation differ accordingly.
 
 See United States v. Johnson,
 
 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982);
 
 Linkletter,
 
 381 U.S. at 628, 85 S.Ct. at 1737;
 
 Great Northern Railway Co. v. Sunburst Oil & Refining Co.,
 
 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932);
 
 Lester v. McFaddon,
 
 415 F.2d 1101 (4th Cir.1969).
 
 [7]
 
 Ultimately, the prospective or retroactive effects of a new rule depend upon the enunciating court’s intention. A court may decide that judicial policy is furthered by making a hew principle of law operate completely retroactively, thereby affecting even decisions which were otherwise finalized.
 
 See, e.g., Ivan v. City of New York,
 
 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972). As an intermediate position, a court may conclude that its decision should be retroactive to all parties on direct appeal,
 
 Johnson,
 
 457 U.S. at 562, 102 S.Ct. at 2594, 73 L.Ed.2d at 222, or it may choose a narrower course and apply its decision only to the case in which the new principle is announced and to those cases initiated in the future.
 
 See, e.g., Kirchberg v. Feenstra,
 
 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981). Finally, a court may make its decision purely prospective, “denying the benefit of the new rule even to the parties before the court.”
 
 Johnson,
 
 457 U.S. at 544, 102 S.Ct. at 2584, 73 L.Ed.2d at 210.
 

 
 *1377
 
 Where the enunciating court fails to identify the limits of its decision, later courts often assume that the new rule applies to cases pending on appeal.
 
 See, e.g., United States
 
 v.
 
 Fitzgerald,
 
 545 F.2d 578, 582 (7th Cir.1976). Were we faced with this situation, then, Twin Parks’ argument concerning
 
 Northern Pipeline
 
 and
 
 Remine’s
 
 applicability to its own case probably would succeed. The Supreme Court in
 
 Northern Pipeline
 
 and this court in
 
 Reminc,
 
 however, have stated clearly that their decisions are to be applied
 
 prospectively. Northern Pipeline,
 
 458 U.S. at 88, 102 S.Ct. at 2880, 73 L.Ed.2d at 626;
 
 Reminc,
 
 704 F.2d at 1319. These direct and unqualified expressions mandate that later tribunals should not apply the new jurisdictional rules to claims, such as
 
 Twin Parks,
 
 which were fully litigated by the bankruptcy judge and the district court and were pending on appeal before the effective date of
 
 Northern Pipeline
 
 and
 
 Reminc.
 

 II
 

 We agree with Twin Parks’ argument, however, concerning the award of interest and hold that the bankruptcy court and the district court committed error in allowing N.S.C. Contractors prejudgment interest beyond the time when the Chapter XII petition was filed. The rule concerning the award of interest against a debtor in bankruptcy was summarized by the Supreme Court in
 
 Vanston Bondholders Protective Committee v. Green,
 
 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946):
 

 As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate.
 

 Id.
 
 at 163, 67 S.Ct. at 240 (quoting
 
 Thomas v. Western Car Co.,
 
 149 U.S. 95, 116-17, 13 S.Ct. 824, 833, 37 L.Ed. 663 (1893)). The
 
 Vanston
 
 court made it clear that while the award of pre-petition interest normally is governed by state law, “[wjhen and under what circumstances federal courts will allow interest on claims against debtors’ estates being administered by them has long been decided by federal law.”
 
 Id.
 

 Vans ton’s
 
 vitality has not diminished.
 
 [8]
 
 This court has recognized its guiding principles in ruling that interest should not be awarded past the point a bankruptcy petition is filed, absent exceptional circumstances.
 
 See Smith v. Robinson,
 
 343 F.2d 793 (4th Cir.1965);
 
 United States v. Harrington,
 
 269 F.2d 719 (4th Cir.1959). These exceptional circumstances are limited to cases where: (1) the debtor claiming bankruptcy protection later proves to be solvent,
 
 Smith v. Robinson, supra;
 
 (2) the property of the debtor continues to earn money,
 
 id.;
 
 (3) the debt is not one discharged by bankruptcy,
 
 Bruning v. United States,
 
 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964). Other courts have also allowed post-petition interest where the creditor’s claim is secured by property of sufficient value to pay both the principal of the debt and accrued interest.
 
 See, e.g., In re Walsh Construction Co.,
 
 669 F.2d 1325 (9th Cir.1982).
 

 Neither the district court nor N.S.C. on appeal attempted to justify the award of post-petition interest under any of these exceptions. The award of interest past June 14, 1979, the filing date of Twin Parks’ Chapter XII petition, was thus inappropriate.
 

 The district court’s award of interest past June 14, 1979, is reversed and the money judgment reduced accordingly. That portion of the interest award attributable to the pre-petition period is governed by state law and remains undisturbed. Finding no error in the other district court actions, all other portions of its judgment are affirmed.
 

 
 *1378
 
 REVERSED IN PART; AFFIRMED IN PART.
 

 [1]
 

 . The petition was filed five months before the effective date of the Bankruptcy Reform Act of 1978 (Reform Act), 11 U.S.C. § 101
 
 et seq.
 
 (1979 & Supp.1983) It was processed under Section 403(a) of the Reform Act, which essentially states that cases commenced before the effective date of the Act will be controlled by pre-1979 law. 11 U.S.C. prec. § 101 (1979 & Supp.1983).
 

 [2]
 

 . Rule 12-43 of the Rules of Bankruptcy Procedure provides: “A petition filed under ... [this section] shall operate as a stay of the commencement or the continuation of any court or other proceedings against the debtor.”
 

 [3]
 

 . Article III, § 1 of the United States Constitution describes the distinguishing characteristics of an Article III judge.
 

 [4]
 

 . In
 
 Northern Pipeline,
 
 the Supreme Court ruled that Section 241(a) of the Bankruptcy Reform Act of 1978 impermissibly granted inherently judicial power to a non-Article III judge. It declined to consider, however, whether the pre-1978 practice of referring wholly state law claims to bankruptcy judges (formerly referees) similarly runs afoul of the constitution, noting only that there appear to be some significant differences between the power exercised by pre-Reform Act judges and the newly created bankruptcy judges.
 
 Northern Pipeline,
 
 458 U.S. at 79-80 n. 31, 102 S.Ct. at 2875-2876 n. 31, 73 L.Ed.2d at 620-621 n. 31.
 

 The case before us calls into question the practices followed under the law existing previous to the Bankruptcy Reform Act.
 
 Reminc,
 
 like the present case, involved a challenge to pre-Reform Act practices and procedures. For this reason, this court’s recent decision in
 
 Rem-inc
 
 has more specific application to the instant case than
 
 Northern Pipeline.
 
 In
 
 Reminc,
 
 we ruled that Rule 810 of the Rules of Bankruptcy Procedure “unconstitutionally vested the non-Article III bankruptcy [judge] with too great a measure of the judiciary power of the United States.” 704 F.2d at 1318.
 

 [5]
 

 .The
 
 Reminc
 
 Court held that Rule 810 of the Rules of Bankruptcy Procedure, which directs the district court to uphold the bankruptcy judge’s factual findings unless clearly erroneous, impermissibly invested the non-Article III bankruptcy judge with judicial power to decide state law claims. All cases decided after the promulgation of Rule 810 would have suffered from the same jurisdictional defect if the rule were applied retroactively. However, those cases, like the one before us now, are left undisturbed because
 
 Reminc
 
 applies only to litigants whose cases are reviewed by a district court after December 24, 1982. 704 F.2d at 1319.
 

 [6]
 

 . The appellant in
 
 Reminc
 
 noted the jurisdictional defects in the district court’s handling of its case well before
 
 Northern Pipeline
 
 was decided. We thought it inequitable to deny
 
 Rem-inc
 
 the benefit of its foresight in pressing the jurisdictional argument to conclusion, but no such equitable concerns are involved here. Twin Parks failed to raise the jurisdictional argument in its appeal until after
 
 Northern Pipeline
 
 was decided. At that point, it simply restructured its appeal to take advantage of the Supreme Court’s later announced decision.
 

 [7]
 

 .
 
 See also Chevron Oil Co. v. Huson,
 
 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), for the factors a court should consider in deciding whether to make a new rule of law prospective or retroactive. Until recently, the
 
 Chevron Oil
 
 factor's guided courts in deciding the retroactive effects of criminal and civil cases. The decision in
 
 United States v. Johnson,
 
 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), however, suggests a different inquiry is appropriate for criminal cases.
 

 [8]
 

 .
 
 See, e.g., Nicholas v. United States,
 
 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966);
 
 Bruning v. United States,
 
 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964);
 
 Debenture holders Protective Comm. of Continental Investment Corp. v. CIC,
 
 679 F.2d 264 (1st Cir.)
 
 cert. denied, -
 
 U.S. -, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982);
 
 In re Walsh Constr. Co.,
 
 669 F.2d 1325 (9th Cir.1982);
 
 In re Petite Auberge Village, Inc.,
 
 650 F.2d 192 (9th Cir. 1981).