971 F.2d 108
 23 Bankr.Ct.Dec. 367, Bankr. L. Rep. P 74,749,
Prod.Liab.Rep. (CCH) P 13,242
 Richard BURSCH; Loretta Bursch, Plaintiffs-Appellees/Cross-Appellants,
v.
BEARDSLEY & PIPER, a DIVISION OF PETTIBONE CORP.,
Defendant-Appellant/Cross-Appellee.
BEARDSLEY & PIPER, a DIVISION OF PETTIBONE CORP.,
Third-Party Plaintiff,
v.
DeZURIK, a DIVISION OF GENERAL SIGNAL MANUFACTURING CORP., a
Delaware Corp., Third-Party Defendant.
 Nos. 91-2891, 91-3028.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 13, 1992.
Decided July 24, 1992.
 
 Robert D. Kolar, Chicago, Ill., argued and on brief (David R. Kelly and Timothy J. Mattson, Minneapolis, Minn., on the brief), for appellant/cross-appellee.
 Robert G. Gubbe, Roseville, Minn., argued (William Krueger, Robert Gubbe, Roseville, Minn., and Donohue Rajkowski, Saint Cloud, Minn., on the brief, for appellees/cross-appellants.
 Before BEAM, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN, Circuit Judge.
 BEAM, Circuit Judge.
 
 
 1
 Beardsley & Piper appeals an adverse judgment arising from a diversity action filed by Richard Bursch, an injured foundry worker, and his wife, Loretta. Beardsley & Piper asserts that the district court erred in denying its request for a superseding cause instruction and in refusing to reallocate part of an uncollectible share of the verdict to Bursch. The Bursches cross-appeal, arguing that the district court erred in denying them prejudgment interest during the period Beardsley & Piper's parent company, Pettibone Corporation (Pettibone), was in bankruptcy. We affirm.
 
 I. BACKGROUND
 
 2
 In January 1981, Richard Bursch suffered permanent injuries while operating a core-making machine[1] during the course of his employment at the DeZurik foundry. Bursch's right forearm and hand became trapped between two pneumatically-driven parts that open and close during the machine's normal operation. Together, the two parts form what is known as the core-box.[2] In addition to being crushed, Bursch's forearm and hand were severely burned because the core-box halves had been heated to approximately 500 degrees fahrenheit. Beardsley & Piper manufactured the machine.
 
 
 3
 The accident stemmed from a problem Bursch experienced while preparing the core-making machine for operation--he could not align the core-box halves. Bursch asked his foreman, Luverne Burger, for help. While the two men were discussing the problem and facing away from the machine, the core-box halves crept closer together and another part of the machine, the blowplate, edged up between them. When Bursch noticed that the blowplate had edged up, he reached in between the core-box halves and moved the blowplate out of the way. The core-box suddenly closed on his hand and forearm. Although Bursch had activated a safety mechanism before reaching into the machine, the safety mechanism only turned off the machine's electrical power, not its pneumatic power.
 
 
 4
 Bursch told Burger how to open the core-box, but Burger did not respond. Eventually, another employee, Arvin Richter ran over to help Bursch. Although Richter was familiar with the machine, he activated the wrong valve, causing the core-box to close even tighter. Richter quickly realized his mistake and activated the correct valve, freeing Bursch. There were no labels next to the controls Richter used to activate the valves.
 
 
 5
 Although DeZurik had an operating manual for the core-making machine, neither Bursch, Burger, nor Richter had ever read it. Bursch had learned how to operate the machine from another operator who apparently also had never read the manual. Bursch failed to follow the safety procedures contained in the manual for aligning the core-box halves and solving problems. For example, Bursch heated the core-box halves before testing their alignment and failed to turn off the pneumatic power before attempting to correct the problem. In addition, it appears that DeZurik did not strictly adhere to the manual's instructions for maintaining and cleaning the machine.[3] The pneumatic valve associated with the core-box was leaking, for example, and sand had accumulated on the machine's parts.
 
 
 6
 On June 7, 1985, the Bursches filed a diversity action in federal court against Beardsley & Piper. The Bursches alleged that Beardsley & Piper negligently designed the core-making machine and failed to provide adequate warnings concerning machine maintenance and safe use. In particular, the Bursches argued that the machine should have had a safety mechanism to prevent the pneumatically-driven core-box from accidentally closing and that the machine and its manual should have had warnings that the core-box could close even though the electric power was off. Beardsley & Piper responded by denying the Bursches' allegations and filing a third-party complaint against DeZurik. According to Beardsley & Piper, the accident was the direct result of DeZurik's failure to properly train and supervise Bursch and to provide Bursch with a safe workplace through proper maintenance of the machine.
 
 
 7
 The case ultimately went to a jury, which found in favor of the Bursches on the negligent design claim and in favor of Beardsley & Piper on the failure to warn claim. The jury also found DeZurik negligent and Bursch contributorily negligent. Answering interrogatories on a verdict form, the jury assessed the Bursches' total damages at $888,000 and apportioned 20 percent of the fault to Beardsley & Piper, 76 percent to DeZurik; and 4 percent to Bursch.
 
 
 8
 After trial, the Bursches moved to reduce their verdict to judgment and requested prejudgment interest. The district court entered judgment, but partially denied the Bursches' request for prejudgment interest. While the Bursches' suit against Beardsley & Piper was pending, Beardsley & Piper's parent corporation, Pettibone, entered into bankruptcy. As a result, the Bursches' suit had been stayed until Pettibone emerged from bankruptcy. The district court denied prejudgment interest for the period that the automatic stay had been in effect.
 
 
 9
 Based on the jury's findings concerning comparative fault, DeZurik's share of the verdict (after adjustments for Burschs' negligence, collateral source payments, and prejudgment interest) was $703,512.69. Beardsley & Piper, however, was only able to recover $379,028.00 from DeZurik because Minnesota's workers' compensation law limits an employer's liability for contribution.[4] As a result, $324,484.69 of DeZurik's share of the verdict was uncollectible. Beardsley & Piper moved for reallocation of this uncollectible amount between the remaining negligent parties, Bursch and itself, based on relative percentages of fault. The district court denied the motion, leaving Beardsley & Piper fully liable for the uncollectible portion of DeZurik's share.
 
 II. DISCUSSION
 A. Superseding Cause Instruction
 
 10
 Beardsley & Piper initially asserts that the district court erred in denying its request for a superseding cause instruction. According to Beardsley & Piper's theory of the case, even if it had negligently designed the core-making machine, DeZurik's negligence was an intervening and superseding cause of the accident. Beardsley & Piper contends that because sufficient evidence was presented at trial to support this theory, the district court abused its discretion in denying Beardsley & Piper's requested instruction.
 
 
 11
 In a diversity action, state law controls the substance of a jury instruction and federal law governs whether the district court should give the instruction. E.g., Roth v. Black & Decker, U.S., Inc., 737 F.2d 779, 784 (8th Cir.1984). Under Minnesota law, a cause is not superseding if, among other things, it was foreseeable by the original wrongdoer. E.g., Bilotta v. Kelley Co., 346 N.W.2d 616, 625 (Minn.1984); Regan v. Stromberg, 285 N.W.2d 97, 100 (Minn.1979). A party is entitled to have an instruction setting forth its theory of the case presented to the jury if the instruction is legally correct and supported by the evidence. E.g., H.H. Robertson Co. v. V.S. DiCarlo Gen. Contractors, Inc., 950 F.2d 572, 578 (8th Cir.1991); Roth, 737 F.2d at 784. We review a district court's decision whether to submit an instruction for abuse of discretion only. See, e.g., Roth, 737 F.2d at 784.
 
 
 12
 We find no abuse in the present case because the evidence presented at trial failed to support the conclusion that DeZurik's negligence was not reasonably foreseeable. Regarding Bursch's training, Beardsley & Piper could have foreseen that Dezurik would not give the manual to Bursch, Richter, or Burger. The manual was technical in nature and contained more information than an operator or foreman needed. Moreover, it was foreseeable that the person training Bursch might not be familiar with the manual either. Beardsley & Piper's own expert admitted that it was common practice in the industry to have existing operators train new ones.
 
 
 13
 As to machine maintenance, Beardsley & Piper reasonably could have foreseen that DeZurik would not maintain the machine in the strict manner recommended in the operating manual. The environment in a foundry is extremely abrasive and sand regularly accumulates on important parts of the core-making machine, including the blowplate. Beardsley & Piper's expert acknowledged that some of the manual's maintenance instructions--such as check every nut, bolt and screw, every day--were not to be taken literally and that even with proper maintenance, valves could still develop leaks.
 
 
 14
 Beardsley & Piper further argues that even if DeZurik's negligent training and maintenance were foreseeable, Richter's failure to activate the correct valve was not, and, as such, was a superseding cause of at least part of Bursch's injuries. According to Beardsley & Piper, this conclusion necessarily flows from the jury's finding in its favor on the Bursches' failure to warn claim. We disagree. It certainly was foreseeable that another employee might attempt to rescue Bursch and it was also foreseeable that, in the confusion of the moment, the employee might accidentally activate the wrong valve regardless of how the controls were labeled. The jury's finding on the failure to warn claim, therefore, does not alter the foreseeability of Richter's mistake.
 
 B. Reallocation
 
 15
 Beardsley & Piper next contends that the district court erred in failing to reallocate the uncollectible portion of DeZurik's share of the verdict between Beardsley & Piper and Bursch. According to Beardsley & Piper, reallocation was proper under Minn.Stat. Ann. § 604.02 (West 1988 & Supp.1992). The district court, however, concluded that Minnesota's reallocation statute did not apply to workers' compensation cases. We review the district court's interpretation of state law de novo. Salve Regina College v. Russell, --- U.S. ----, ----, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). We find no error.
 
 
 16
 Since the district court rendered its decision, the Minnesota Court of Appeals has considered the applicability of section 604.02 in the workers' compensation context. See Hahn v. Tri-Line Farmers Co-op, 478 N.W.2d 515 (Minn.Ct.App.1991), review denied, 478 N.W.2d 515 (Minn. Jan. 27, 1992). The Hahn court held that section 604.02 did not permit reallocation of an employers' uncollectible share of a verdict to a negligent employee. Id. at 522. Although we may not be bound to follow the decisions of intermediate state courts when interpreting state law, such opinions are highly persuasive and should be followed when they are the best evidence of state law. Garnac Grain Co. v. Blackley, 932 F.2d 1563, 1570 (8th Cir.1991).
 
 
 17
 We believe that the Hahn court's interpretation of section 604.02 is sufficiently persuasive so as to be controlling in the present case. The opinion is well-reasoned and consistent with the Minnesota Supreme Court's interpretation of Minnesota's workers' compensation system and section 604.02. See Kempa v. E.W. Coons Co., 370 N.W.2d 414 (Minn.1985); Lambertson v. Cincinnati Corp., 312 Minn. 114, 257 N.W.2d 679 (1977). We believe that the Hahn opinion represents the best evidence of Minnesota law regarding the applicability of section 604.02 to workers' compensation cases. The district court, therefore, did not err in refusing to apply section 604.02 to reallocate the uncollectible portion of DeZurik's share of the verdict between Bursch and Beardsley & Piper.
 
 
 18
 Beardsley & Piper argues in the alternative that even if section 604.02 were inapplicable, the district court should have reallocated DeZurik's uncollectible share of the verdict under the doctrine of equitable contribution. We have serious doubts about this argument, but need not discuss it here. Beardsley & Piper did not raise the argument before the district court and, thus, failed to preserve the issue for review on appeal. E.g., Wealot v. Armontrout, 948 F.2d 497, 499 (8th Cir.1991); Young v. Lockhart, 892 F.2d 1348, 1354 (8th Cir.1989).
 
 C. Prejudgment Interest
 
 19
 The Bursches cross-appeal, arguing that the district court erred in denying their request for prejudgment interest against Beardsley & Piper for the period of Pettibone's bankruptcy. The district court relied on section 502(b) of the Bankruptcy Code, which provides that no interest will accrue after a bankruptcy filing and that any unmatured interest which becomes due after the filing date shall be disallowed. 11 U.S.C.A. § 502(b) (West Supp.1992); see, e.g., E.E.O.C. v. Rath Packing Co., 787 F.2d 318, 327 (8th Cir.), cert. denied, 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986). We believe the district court properly denied the Bursches' request for prejudgment interest during the period of the bankruptcy stay.
 
 
 20
 The Bursches initially assert that they are entitled to prejudgment interest as a matter of right under Minnesota law. See Minn.Stat. Ann. § 549.09 (West Supp.1992); Lienhard v. State, 431 N.W.2d 861, 865 (Minn.1988).[5] This may be so, but once a bankruptcy petition is filed, federal law, not state law, determines a creditor's rights. See In re Griffin Retreading Co., 795 F.2d 676, 678 (8th Cir.1986). The issue here, therefore, is whether under the Bankruptcy Code, the Bursches are entitled to prejudgment interest during the period of the Pettibone bankruptcy. In general, under section 502(b), a creditor is not entitled to postpetition prejudgment interest because such interest is unmatured at the time of filing. In re Comstock Fin. Servs., Inc., 111 B.R. 849, 860 (Bankr.C.D.Cal.1990); see Alvord-Polk, Inc. v. F. Schumacher & Co., 1992-1 Trade Cas. (CCH) p 69,837 (E.D.Pa. Mar. 19, 1992).
 
 
 21
 The Bursches, however, contend that section 502(b) does not apply here because Beardsley & Piper's liability insurance provides sufficient coverage for prejudgment interest.[6] In their initial brief, the Bursches support this position by citing a line of cases holding that the discharge of a debt under section 524(e) of the Bankruptcy Code does not relieve the debtor's insurer of derivative liability for the debt. See, e.g., In re Jet Florida Sys., Inc., 883 F.2d 970, 973 (11th Cir.1989); In re Lembke, 93 B.R. 701, 702, 18 Bankr.Ct.Dec. 911 (Bankr.D.N.D.1988).
 
 
 22
 Although the Bursches have accurately summarized the law concerning the effect of a discharge on an insurer's derivative liability, the analysis underlying these decisions does not apply to the present case. Where a claim is discharged, the debt is recognized in bankruptcy--that is, allowed--but the debtor is relieved of responsibility for it. Because this relief is limited to the debtor, a party derivatively liable for the debt, such as an insurer, remains responsible. See, e.g., In re Jet Florida Sys., 883 F.2d at 973; In re Lembke, 93 B.R. at 702, 18 Bankr.Ct.Dec. 911. Where a claim is disallowed, however, the debt is not recognized and the creditor is unable to share in any distribution of the debtor's assets. See 3 Collier on Bankruptcy p 502.02, at 502-19 (15th ed. 1992). In this situation, an insurer cannot be derivatively liable for the debt because the debtor was never principally liable for it. Because the cases which the Bursches cite presume that the underlying claim has been allowed, the cases are not relevant to the issue presented here--whether the Bursches' claim should be allowed in the first place.
 
 
 23
 In their reply brief, the Bursches augment their insurance coverage argument, emphasizing that Beardsley & Piper has a surplus of liability insurance coverage for the year Bursch was injured.[7] In particular, the Bursches cite our decision in In re Hanna, 872 F.2d 829 (8th Cir.1989). In Hanna, we explained that
 
 
 24
 [t]he general rule "disallowing" the payment of unmatured interest out of the assets of the bankruptcy estate is a rule of administrative convenience and fairness to all creditors.... [W]hen concerns for administrative convenience and fairness are not present, postpetition interest will be "allowed." For example, if a creditor is oversecured--the value of his security is sufficient not only to satisfy the principal amount of the claim, but also to satisfy postpetition interest, then such interest is "allowed."
 
 
 25
 Id. at 830-31 (citations omitted). The Bursches contend that Beardsley & Piper, with its surplus of insurance coverage, is comparable to the oversecured creditor in Hanna.
 
 
 26
 We find the Bursches' analogy flawed. Unlike the security in Hanna, the insurance proceeds of Beardsley & Piper's policy are not yet part of the debtor's estate.[8] As previously discussed, the liability of Beardsley & Piper's insurer is derivative--the insurer is not liable for a claim unless Beardsley & Piper is liable first. The Bursches ask us to hold that Beardsley & Piper is liable for prejudgment interest because sufficient insurance coverage exists for such interest if Beardsley & Piper were liable. This logic amounts to legal bootstrapping. The district court, therefore, did not err in denying the Bursches prejudgment interest for the period of the Pettibone bankruptcy.
 
 III. CONCLUSION
 
 27
 For the reasons stated above, we affirm the judgment of the district court as to both the issues raised in Beardsley & Piper's appeal and the issue raised in the Bursches' cross-appeal.
 
 
 
 [1]
 A core-making machine produces sand cores that serve as hollow areas for metal castings
 
 
 [2]
 The core-box contains a hollow center in which the sand core is made
 
 
 [3]
 DeZurik contested this fact at trial
 
 
 [4]
 Under Minnesota's nonfault workers' compensation system, an employee injured during the course of employment is entitled to receive compensation. In return, the employee relinquishes any right to bring a common law action against the employer for damages. Lambertson v. Cincinnati Corp., 312 Minn. 114, 257 N.W.2d 679, 684 (1977). A third-party tortfeasor, however, may seek contribution from the employer. The employer's contribution, nonetheless, is limited to the lesser of its workers' compensation liability or its fair share of the employee's judgment. Id. at 689. In the present case, DeZurik's workers' compensation liability was $379,028.00
 
 
 [5]
 The Bursches also rely on Minn.Stat.Ann. § 72A.201 (West Supp.1992), which regulates insurance claims practices. Section 72A.201, however, did not become effective until May 26, 1989, after the insurance policy involved in the present case was issued. As such, the section does not apply to this policy. See AMCO Ins. Co. v. Lang, 420 N.W.2d 895, 898 (Minn.1988)
 
 
 [6]
 Beardsley & Piper, however, contends that coverage for postpetition prejudgment interest does not exist under the terms of Pettibone's reorganization plan
 
 
 [7]
 According to the Bursches, the coverage limits of Beardsley & Piper's liability insurance policy for the year Bursch was injured is $25 million, while the total proofs of claims for products liability actions in the same year is less than $9 million
 
 
 [8]
 Although a debtor's interest in an insurance policy is property of the debtor's estate, the proceeds of the policy only become part of the estate once it is held that coverage for a claim exists. See In re Titan Energy, Inc., 837 F.2d 325, 328-29 (8th Cir.1988)