**In re UNITED STATES LINES, INC., Debtor.**

**Bankruptcy No. 86–B–12240(CB).**

United States Bankruptcy Court, S.D. New York.

Aug. 13, 1996.

Healy & Baillie by John D. Kimball, Jeremy J.O. Harwood, New York City, for U.S. Lines, Inc. and United States Lines (S.A.) Inc.

Paul C. Matthews, New York City, for Claimant Valverde.

### MEMORANDUM DECISION PERTAINING TO THE ALLOWANCE OF INTEREST ON A CLAIM

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

By notice of motion dated October 26, 1994, the United States Lines, Inc. ("U.S.L.") and United States Lines (S.A.) Inc. Reorganization Trust (the "Trust"), as successor-in-interest to U.S.L. and United States Lines (S.A.), Inc. (collectively, the "Debtors"), moved this Court, pursuant to section 502 of Title 11, United States Code (the "Bankruptcy Code"), and Rules 3007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order denying that portion of the liquidated unsecured claim of the Public Administrator of the County of New York, Administrator of the Estate of Alfredo Valverde, Deceased ("Valverde" or "Claimant"), which represents both pre- and post-judgment interest.

### FACTS

On November 24, 1986, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Petition Date"). That same day, this Court entered an order pursuant to § 362(a) of the Bankruptcy Code prohibiting the commencement or continuation of suits on all prepetition causes of action against the Debtors (the "Restraining Order"). By order of this Court dated May 16, 1989, the Debtors' Plan of Reorganization was confirmed (the "Plan"). The Trust is the successor-in-interest to the Debtors pursuant to a trust agreement approved by this Court as part of the Plan. The Plan makes no provision for payment of interest, whether pre or postpetition or pre- or post-judgment, on any allowed non-priority general unsecured claims.

By order dated April 18, 1990, this Court: (1) extended the automatic stay and Restraining Order regarding personal injury claims until termination of the Trust; and (2) established a procedure for resolving personal injury claims. By order dated December 12, 1988 (the "Matthews Order"), this Court modified the automatic stay and Restraining Order to allow actions of personal injury claimants represented by Paul Matthews, Esq., including that of the estate of Alfredo Valverde, plaintiff, to proceed to final adjudication. It provides, in material part, as follows:

1. The Automatic Stay and the Restraining Order shall be modified for the sole purpose of allowing the Actions to continue to trial and judgment or settlement and allowing, in the case of the Claims, civil actions to be commenced in a court of competent jurisdiction and then to continue to trial and judgment or settlement, but shall remain in full force and effect as to enforcement of any judgment or settlement of the Actions and Claims except to the extent that such judgments or settlements are satisfied solely from the Insurance as provided herein.

\* \* \* \* \* \*

3. The judgments or settlements, if any (the "Judgments"), resulting from a modification of the automatic stay and the Restraining Order as to the Actions and the Claims shall not be enforced against the Debtors or any of their affiliates against any assets thereof, but may be satisfied in

whole or in part by Insurance without further order of this Court.

The Matthews Order at ¶¶ 1, 3.

### A. Valverde's Claim

On November 23, 1987, Valverde filed a prepetition claim in the amount of $2,000,000 for the alleged wrongful death and physical pain and suffering of Alfredo Valverde (the "Valverde Claim").[1] Valverde was swept overboard on November 30, 1983,—while serving as merchant seaman—from the U.S.L.'s vessel, "M/V American Trader." His body was never recovered.

Pursuant to the terms of the Matthews Order, U.S.L.'s marine indemnity insurer—United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Limited (hereinafter, the "UK Club")—retained counsel to defend, among others, the Valverde Claim. Following a jury trial on May 7, 1992, in the Supreme Court of the State of New York ("Trial Court"), a judgment was entered against U.S.L. in the amount of $1,641,500, together with interest from August 8, 1990, the date of the verdict, amounting to $258,125.87, plus costs, for a total sum of $1,900,695.87.[2] On May 26, 1992, the Trial Court denied U.S.L.'s application, pursuant to CPLR § 5019(a), to strike the interest awarded from the date of the verdict.

By order dated October 7, 1993, the New York State Appellate Division ("Appellate Division") modified the judgment and awarded Valverde prejudgment interest, at a rate of ten percent (10%) per annum, from the date of Valverde's death on November 30, 1983. The Appellate Division remanded the action to the Trial Court for modification of the judgment consistent with its opinion. On January 18, 1994, the Court of Appeals for the State of New York denied U.S.L.'s motion for leave to appeal. Finally, U.S.L.'s petition for certiorari in the United States Supreme Court was denied by order dated May 16, 1994. The Trial Court entered a modified judgment on April 28, 1994, awarding Valverde the sum of $1,641,500 plus costs and disbursements of $1,070 together with prejudgment interest compounded annually from November 30, 1983 through the date of entry in the sum of $2,030,481.44 for a total sum of $3,673,051.44 (the "Valverde Judgment").[3]

### B. Partial Satisfaction

The UK Club agreed to reimburse the Trust upon presentation of a claim for indemnity for the principal amount of the Valverde Judgment plus costs. On September 26, 1994, the Trust sent Paul Matthews a check for $1,642,570 who acknowledged receipt of that sum in partial satisfaction of the Valverde Claim and verified that the claim for interest was not being waived. The Trust was subsequently reimbursed by the UK Club for $1,642,570.

### C. Claim for Interest

According to the Trust, the "UK Club has taken the position that the Trust will be held in breach of its 'sue and labour' obligation under UK Club Rule 5(M) if interest, for which the Trust is not liable, is paid by the Trust on the Valverde Claim." See, Affidavit of John T. Paulyson sworn to On October 25, 1994 (the "Paulyson Affidavit") at ¶ 30.[4] Thus, the Court must decide whether Valverde's claim for pre- and post-judgment interest should be denied.

### JURISDICTION

This Court has jurisdiction to hear this matter: (1) pursuant to Article XIII(A) of the Plan which provides that "the Court shall

---

1. Officially designated as proof of claim no. 957100. It is undisputed that the Valverde Claim is a non-priority general unsecured claim.

2. See, Pub. Adm'r of Valverde v. United States Lines, No. 17312/85 (N.Y.Sup.Ct. May 7, 1992).

3. See, Pub. Adm'r of Valverde v. United States Lines, No. 17312/85 (N.Y.Sup.Ct. May 7, 1992, amended April 28, 1994).

4. Notwithstanding the position it has taken in this action, the Trust acknowledges that it has paid interest on at least two different prepetition personal injury judgments. See, Magee v. United States Lines, Inc., 976 F.2d 821 (2d Cir.1992) and Dumas v. United States Lines, Inc., Index No. 7911/85 (N.Y.Sup.Ct. January 17, 1992). The UK Club had reimbursed the Trust the actual amounts paid, less the unexpended deductibles in these previous instances.

retain jurisdiction for ... [d]etermination of the allowability of Claims and Interests upon objection to such claims by the Debtors"; (2) as an action arising under Title 11 U.S.C. 101 *et seq.;* and (3) pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### ARGUMENT

**A. *The Doctrines of Full Faith and Credit, Res Judicata and/or Collateral Estoppel***

■ Claimant argues that the Trust should be barred from challenging the allowability of the interest portion of the Valverde Claim based upon the doctrines of full faith and credit, res judicata and/or collateral estoppel. In sum, Claimant argues that this Court lacks jurisdiction over the issue of interest because that issue was decided in the state court litigation. *See* Respondent Memorandum of Law filed February 2, 1995 at p. 9 (*citing Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 375, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940)). As will be discussed below, the Claimant's arguments are entirely misplaced.

First, this Court is not re-deciding the validity of the Valverde Judgment. For all intensive purposes, this Court accepts the state court's "liquidation" of the Valverde Claim. Rather, the issue before this Court is to what extent the Valverde Judgment is enforceable against the Debtors' estates pursuant to the Bankruptcy Code. Thus, the full faith and credit doctrine is not implicated here.

■ Second, the allowability of the Valverde Judgment was not and could not, have been addressed in the state court litigation. Admittedly, the doctrine of res judicata prohibits parties to a litigation from re-litigating issues that were or could have been addressed in the action. *Burgos v. Hopkins,* 14 F.3d 787, 789 (2d Cir.1994); *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980). However, the claims allowance process is within the exclusive jurisdiction of the bankruptcy courts. *In re Bowers,* 16 B.R. 298, 302 (Bankr.D.Conn. 1981) (*citing Vanston Bondholders Protective*

*Comm. v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946)); *In re Comstock Fin. Services, Inc.,* 111 B.R. 849, 855 (Bankr. C.D.Cal.1990). The Valverde Claim was among the many claims sent to the state courts to be liquidated pursuant to 28 U.S.C. § 1334(c)(1). Now that it has been liquidated, the issue as to the allowability of that claim is properly before this Court. Since the allowability of the claim in bankruptcy is exclusively within the province of the bankruptcy courts and could not have been addressed by the state courts, the doctrine of res judicata is inapplicable.

Third, the doctrine of collateral estoppel merely bars rehearing on the same issue previously decided in a lower court. *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 467 N.E.2d 487, 478 N.Y.S.2d 823, 826 (N.Y. 1984). As previously discussed, the issue of the allowability of the interest portion of the Valverde Judgment under the Plan and pursuant to the Bankruptcy Code was not, nor could it have been, raised in the state court litigation. Thus, the doctrine of collateral estoppel is similarly inapplicable.

**B. *Unmatured Interest***

■ Section 502 of the Bankruptcy Code clearly provides that claims for unmatured interest shall not be allowed. It provides, in relevant part, that:

> [t]he court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, *except to the extent that ... (2) such claim is for unmatured interest* (emphasis added).

11 U.S.C. § 502(b)(2).

The term "unmatured interest" is not defined by the Bankruptcy Code. *In re Pengo Indus., Inc.,* 962 F.2d 543, 546 (5th Cir.1992) *cert. denied,* 506 U.S. 1000, 113 S.Ct. 602, 121 L.Ed.2d 538 (1992). Legislative history does, however, provide the following two different examples of unmatured interest: (1) "postpetition interest that is not yet due and payable[; and (2) ] any portion of prepaid interest that represents an original discounting of

the claim, yet that would not have been earned on the date of the bankruptcy." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 352–53 (1977); S.Rep. No. 95–989. 95th Cong., 2d Sess. 62 (1978), U.S.Code Cong. & Admin.News 1978 pp. 5848, 6308–6309. A number of courts have defined "unmatured interest" as a claim "for interest that existed at the date of filing the petition," *Ridgemont Apartment Assocs., Ltd. v. Atlanta English Village, Ltd.*, 110 B.R. 77, 82 (N.D.Ga.1989), *aff'd*, 890 F.2d 1166 (11th Cir.1989), or as interest that has not been "earned" as of the filing of the petition, *In re Chateaugay Corp.*, 109 B.R. 51, 57 (Bankr.S.D.N.Y.1990), *aff'd*, 130 B.R. 403 (S.D.N.Y.1991), *aff'd in part, rev. in part on other grounds*, 961 F.2d 378 (2nd Cir.1992); *see also, In re X–Cel, Inc.*, 75 B.R. 781, 788–89 (N.D.Ill.1987); and *In re Joyce*, 41 B.R. 249, 254 (Bankr.E.D.Pa.1984).

▮ Neither party disputes the long standing rule in bankruptcy that unsecured creditors are not entitled to postpetition interest on their claims. 11 U.S.C. § 502; *Thomas v. Western Car Co.*, 149 U.S. 95, 116–17, 13 S.Ct. 824, 833, 37 L.Ed. 663 (1893); *Sexton v. Dreyfus*, 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911); *Vanston*, 329 U.S. at 163, 67 S.Ct. at 240; *Nicholas v. United States*, 384 U.S. 678, 687, 86 S.Ct. 1674, 1681–82, 16 L.Ed.2d 853 (1966); *In re Lykens Hosiery Mills, Inc.*, 141 F.Supp. 895, 897 (S.D.N.Y.1956); *In re Twin Parks Ltd. Partnership*, 720 F.2d 1374, 1377 (4th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984). That is, as of the petition date, all debts are frozen and all interest ceases to accrue. This time honored rule was well supported by the case law long before it was codified in section 502 of the Bankruptcy Code. In *Vanston*, the Court disallowed postpetition interest on unpaid interest on first mortgage bonds even though the indenture provided for payment of such interest. *Vanston*, 329 U.S. at 163, 67 S.Ct. at 240. The Court stated that "[t]he general rule in bankruptcy and in equity receivership has been that interest on the debtor's obligations ceases to accrue at the beginning of proceedings." *Id.* at 161, 67 S.Ct. at 239. To do otherwise would be to charge a debtor with interest for claims held up by the judicial process—a process created to protect the bankrupt, while administering a ratable distribution among the bankrupt's creditors. *Id.*

In a similar case, *Bursch v. Beardsley & Piper*, 971 F.2d 108, 114 (8th Cir.1992), the Eighth Circuit held that "a creditor is not entitled to postpetition prejudgment interest because such interest is unmatured at the time of filing." In *Bursch*, the creditor had obtained a judgment postpetition on its personal injury claim.

Thus, that portion of the Valverde Claim which represents interest accruing after the Petition Date, whether pre- or post-judgment, is not an allowable claim. Accordingly, the Trust is prohibited from paying that portion of the Valverde Claim.

▮ The Claimant urges this Court to use its equitable powers to allow for payment of interest. Certainly, this Court keeps in mind equitable principals when interpreting the statutes. Indeed, "the touchstone of each principle on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or creditors and debtor." *Vanston*, 329 U.S. at 165, 67 S.Ct. at 241; *see also, Sexton*, 219 U.S. at 346, 31 S.Ct. at 258. That is the reason courts consider claims for interest "in light of each claim and the equities of the case before it." *In re Boston and Maine Corp.*, 719 F.2d 493, 496 (1st Cir.1983) *cert. denied*, 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984). However, this Court is ultimately bound by the mandates and limits set forth in the Bankruptcy Code. That is, "[w]hen a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code." *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir.1993). Thus, not even equity will permit this Court to allow a claim for postpetition interest.[5]

---

5. That the UK Trust paid, without protest, the post-petition interest for two prior claims does not in any way change this Court's analysis.

The issue remains, however, as to the allowability of that portion of the Valverde Claim which represents prepetition, pre-judgment interest. The Bankruptcy Code does not specifically provide for a definitive answer and there exists no case law on point. *In re Pettibone Corp.*, 134 B.R. 349, 352 (Bankr.N.D.Ill.1991) ("Whether pre-judgment interest is cut-off when the judgment is entered post-petition, and whether section 502(b)(2) prohibits the allowance of unmatured interest in that situation, may have to be determined in the context of some other dispute."). It is, however, this Court's position that the Bankruptcy Code contemplates the allowance of claims for prepetition interest. The legislative history expressly lists postpetition interest as an unmatured claim for interest, whereas it is silent as to prepetition interest. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 352–53 (1977); S.Rep. No. 95–989, 95th Cong.2d Sess. 62 (1978), *reprinted in* U.S.Code Cong. & Admin.News, 1978, Vol. V, 5787, 5848–49, 5963, 6308–09. By modifying the term "interest" with the term "postpetition", the Code qualifies its intent to limit the disallowance of interest to only that which accrues postpetition. Applying the doctrine of *espresso unius est exclusio alterius* (a maxim of statutory interpretation meaning that the expression of one thing is the exclusion of another), prepetition interest should be allowed. Indeed, it is generally accepted that an unsecured creditor is entitled to prepetition interest on his/her claim as long as it is allowable under applicable state law. In *In re Chateaugay Corp.*, the court stated that "[p]re-petition interest otherwise due as a matter of contract or law will generally be fully allowed as part of a claim." *In re Chateaugay Corp.*, 109 B.R. at 52; *see also, In re Pettibone Corp.*, 134 B.R. at 351. Given the guidelines provided by legislative history and the case law, the question is whether the prepetition, pre-judgment interest was "due and payable" as of the petition date.

The Trust proffers the theory that because the Valverde Judgment was entered postpetition, any interest imputed thereon by the state court was "unmatured" as of the Petition Date, and, accordingly, should be disallowed. Under this theory, a claim for interest on an unliquidated claim is unmatured if that claim was not reduced to judgment as of the petition date.

In support of its theory, the Trust relies upon the holding in *In re George Hunt, Inc.*, 60 B.R. 183, 186 (Bankr.M.D.Fla.1986), which denied interest, as constituting unmatured interest, on a worker's compensation claim which was reduced to judgment postpetition. To the extent the Trust's interpretation of *George Hunt* is correct, this Court respectfully disagrees with the holding in that case. First, it is not apparent to this Court that the holding in *George Hunt* is clear. Nowhere in the decision does the bankruptcy court make a distinction between either pre- and postpetition or pre- and post-judgment interest. It is entirely possible that the claim in the *George Hunt* case included postpetition, post-judgment interest—the actual grounds for the denial of the claim.

The Trust incorrectly equates the term "unmatured" to the term "unliquidated."[6] The Bankruptcy Code clearly contemplates the postpetition liquidation of claims that were unliquidated as of the petition date. Indeed, section 502 provides that the court "shall allow such claim" after the court "determines the value of" any unliquidated claims. By granting courts the power to make retroactive value determinations, the Bankruptcy Code does not support the Trust's assertion that an allowance of interest turns on the liquidity of the claim as of the petition date. Certainly, liquidation of a claim does not impact upon the validity of the claim—Valverde has a valid, enforceable claim as of the Petition Date, notwithstanding the fact that it had not been reduced to judgment as of the Petition Date. This claim, stripped of the interest portion, was due and payable as of the Petition Date.

---

6. The terms unmatured and unliquidated are not clearly defined in the Bankruptcy Code. However, as defined in the dictionary, a "Matured" claim is defined as being unconditionally due and owing. Deluxe Black's Law Dictionary, at 979 (Sixth Edition 1990). "Unmatured" would, of course, suggest the opposite.

Unliquidated means "not ascertained in amount, not determined; remaining unassessed or unsettled, as unliquidated damages." *Id.* at 1537.

Likewise, the prepetition, pre-judgment portion would have been due and payable as of the Petition Date.

The case at bar is analogous to *Bursch*, in which the court allowed prepetition, pre-judgment interest on a personal injury claim which was reduced to judgment postpetition but denied the allowance of postpetition, pre-judgment interest. *Bursch*, 971 F.2d at 108. In fact, the question of the former was not before the court, only the latter. It appeared that the court, as well as the parties, in *Bursch* agreed that prepetition, pre-judgment interest was allowable.

Moreover, this Court does not see the wisdom in allowing for different outcomes simply based upon whether the judgment was entered postpetition or prepetition. To accept the Trust's theory would mean that those creditors who have the good fortune of having their unsecured claims reduced to judgment prior to the debtor's bankruptcy filing will be entitled to prepetition interest on their claim, while those with the misfortune of obtaining a judgment on their prepetition claims subsequent to the debtor's bankruptcy filing will not be entitled to prepetition interest. In many instances, it is the courts, and not the creditors, with the ultimate control over when a judgment is rendered. The flip side of the argument in *Vanston* applies here—to charge the creditors held up by the judicial process would be just as inequitable as charging the Debtor interest for claims held up by the judicial process. *Vanston*, 329 U.S. at 161, 67 S.Ct. at 239. This Court cannot adopt such an arbitrary rule because it contradicts equitable bankruptcy principals and law.

■ In sum, the petition date is the crucial date for the accrual of interest on a claim, and the date judgment is entered is irrelevant.

### C. The Liability of the UK Club

■ Valverde asserts that the existence of the UK Club's protection and indemnity insurance, from which the Trust may be reimbursed pursuant to the UK Club's policy terms, should permit interest on an allowed claim. The Claimant cites to what this Court terms as the "liquidity exceptions"—which are the following three exceptions to the general rule prohibiting the payment of postpetition interest on unsecured claims adopted by certain courts. Payment of postpetition interest is allowed: (1) where the bankrupt estate ultimately proves to be solvent; (2) where securities held by the creditor produce income after the filing of the petition; and (3) where the amount of the secured creditor's security is sufficient to satisfy both the principal and interest due on the secured claim. *In Boston and Maine Corp.*, 719 F.2d at 496. Claimant argues that the Debtors are effectively solvent as to the Valverde Claim because the modified automatic stay and Restraining Order allow satisfaction of all judgments and settlements by the UK Club and payment of the Valverde Claim will not exceed the liability coverage.[7] Therefore, the Claimant concludes that pursuant to aforementioned liquidity exceptions, the postpetition interest portion of the Valverde Claim should be allowed in full.

■ The mere fact that the UK Club will ultimately pay the Valverde Claim is not dispositive of the issue. Valverde confuses the solvency of U.S.L. and the liability of the UK Club as one and the same. Where the insurer is derivatively liable on a claim, that claim must first be valid as against the debtor before the insurer's liability is triggered. As the court in *Bursch* stated: "[i]n this situation, an insurer cannot be derivatively liable for the debt because the debtor was never principally liable for it." 971 F.2d at 114. In the instant case, the Trust is primarily liable for the debt and, thus, the UK Club cannot be derivatively liable if this Court disallows the interest portion of the Valverde Claim.

Moreover, while the UK Club is indeed to satisfy these claims, it appears that careful consideration was paid to prevent the voluntary nature of the order from assuming a mandatory character.[8] Paragraph 3 of the

---

7. *See* Order dated January 12, 1990, at ¶ 3, Exh. 5 to Paulyson Affidavit.

8. *Id.*

order states that such claims "may be satisfied" not that they must only be satisfied by insurance (emphasis added). Additionally, payment is conditional upon the "approval of the [UK] Club in exercise of its sole discretion." *Id.* at ¶ 4. This nonbinding modification was created to efficiently handle claims, and "[not] ... deemed to ... be a waiver by the [UK] Club of any rights of defenses under the terms and conditions of the Insurance". *Id.* at ¶ 6.

■ Claimant's reliance on *In re Jet Florida Systems, Inc.,* 883 F.2d 970 (11th Cir.1989), for the proposition that an insurance company is obligated to pay a claim regardless of the enforceability against a debtor's estate is misplaced. The issue before the *Jet* court was the continuing liability of an insurance company where the debtor had been discharged from its primary liability. As the court noted, the insurance company's liability is not altered by the debtor's discharge as long as the claim would have been a valid and enforceable claim against the debtor had there been no discharge. *Id.* at 976. The issue of dischargeability only arises when one concedes that the claim was allowed against the Debtor. The instant case, however, does not involve the discharge of a claim. Rather, it involves whether the claim itself is even allowable in the first instance against the Debtor. Consequently, the existence of insurance does not change this Court's analysis.

## *CONCLUSION*

Based upon the foregoing reasons, the Valverde Claim is disallowed pursuant to U.S.C. § 502(b)(2) to the extent it represents postpetition interest—both pre- and post-judgment—and is allowed to the extent it includes prepetition, prejudgment interest.

Valverde is hereby ordered to settle an order consistent with this Court's ruling on five (5) days' notice.